## PEARSON v. WILLIAMS' Administrators.

Where a purchaser of 14 city lots covenanted in consideration of having the property conveyed to him for *only* $21,000, that he would, by a certain day, erect on the lots, two brick houses of specified dimensions, or in default thereof, *pay to the grantor on demand,* the sum of $4000: IT WAS HELD that the sum specified was *not* a *penalty,* but should be deemed part of the contract price of the lots, and that on failure to erect the houses, the *covenantee* was entitled to recover the specified sum as *liquidated damages,* and could not be limited merely to *actual damages,* sustained in consequence of the non-erection of the houses.

ERROR from the Supreme Court. Williams' administrators brought an action of *covenant* against Pearson in the superior court of the city of New-York, on an instrument in writing under seal, executed by the defendant, Isaac Green Pearson, in the following words: " In consideration that Cornelius Tiebout Williams, for the consideration of twenty-one thousand dollars *only,* has by deed of this date conveyed to Isaac Green Pearson *fourteen* lots of land in the twelfth ward of the city of New-York, to wit: seven on the north-easterly side of Sixteenth-street, and seven on the south-westerly side of Seventeenth-street, containing when taken together, in each of those streets, one hundred and twenty-five feet front, and distant one hundred and twenty-five feet east of Union Square Place, and one hundred and twenty-five feet west of Irving Place; Now therefore, the said Isaac Green Pearson doth hereby covenant with the said Cornelius Tiebout Williams, that he will with reasonable diligence remove off from the said lots the surplus earth and stone above the corporation level; and *further,* that he will erect, or cause to be erected, on or before the 1st day of May, 1836, on some part or parts of the said lots *two brick houses,* each not to be less than twenty-five feet front, nor less than forty feet in depth, and not less than two stories in height: or, *in default of erecting such houses* as above mentioned, the said Isaac

Green Pearson will pay to the said Cornelius Tiebout Williams, or his executors or administrators, *on demand*, after the 1st day of May, 1836, the sum of *four thousand dollars*." The defendant pleaded *non est factum*, and subjoined to the plea a notice of special matter to be given in evidence on the trial of the cause. On the trial it was admitted that neither of the houses mentioned in the covenant were erected by the first day of May, 1836, and that even the foundations were not laid; and also that the surplus earth was only partially removed from the lots. On the *third* day of *May*, 1836, the plaintiffs demanded the four thousand dollars mentioned in the covenant, and the defendant refused to pay. The judge decided that the four thousand dollars were to be considered as *liquidated damages:* to which decision the defendant excepted, and judgment having passed against him for that sum, he removed the record into the supreme court, where the judgment of the court below was affirmed. See the opinion delivered in the supreme court by Mr. *Justice* BRONSON, 24 *Wendell* 246, *et seq.* The defendant sued out a writ of error removing the record into this court, where the case was argued by:

*J. Prescott Hall*, for the plaintiff in error.

*W. Betts*, for the defendants in error.

After advisement, the following opinions were delivered:

*By the* CHANCELLOR. I think there is no room to doubt the correctness of the decision of the supreme court in this case. The object of the parties to the agreement is very evident. The one wanted to purchase the lots upon a speculation, for the lowest price for which they could be obtained. The other not only wanted to sell his lots at the price agreed to be paid, but also to secure the improvement of the lots within a certain specified time, for the benefit of the venders of other property, or to enhance the

*1841.*

Pearson
*v.*
Williams'
Administr's.

value of what he had left, or that the purchaser should pay him a further sum, in addition to the $21,000: which sum *only* he was to receive if the two lots should be built upon, in the manner specified within the two years. The agreement was this: the purchaser first stipulated to dig down or grade the lots *within a reasonable time:* both parties evidently understanding that such reasonable time would be much less than the two years; and the purchaser was then to build the houses within the two years, or to pay $4,000 more for the lots, at his own election; for, if this was not a matter of election on the part of the purchaser, but a positive agreement to build the houses within that time at all events, then the vendor could have recovered all damage which might happen in consequence of his neglect to build, even if it amounted to $10,000. The improvement was not made in time to enable the vendor to take advantage of the high prices of 1836 and 1837, in disposing of the adjacent property. The vendor, therefore, was clearly entitled to the additional $4,000 which the purchaser had agreed to pay for the lots in the event which happened. And unless this court feels itself authorized to make a new bargain for the parties, which neither of them ever thought of making for themselves, we cannot reverse the decision of the court below. For these reasons I shall vote to affirm the judgment.

By *Senator* ELY. The doctrine of liquidated damages, which denies all abatement of the sum specified in the contract, is rigorous in the extreme, and should never be extended or applied to cases in which the terms of the instrument, construed in the most popular sense, will admit of a doubtful construction. The tenor of the instrument taken together, should clearly declare the stipulation to be to liquidate all damages, or a rule which operates with so much severity should not be held to apply; for, in an action for damages, the plaintiff below would have found a remedy for all that he had lost by reason of the neglect of

the party, or the non-performance of the covenants. The doctrine should never be applied to a class of contracts which admits of partial performance, as in a case like this, where the houses may have been partly built, and the surplus earth partly removed—or the surplus earth removed, and the houses partly built but not finished—but to that class only where the contract must be either wholly performed, or in which there must be a total failure. It is unreasonable to believe, in the case under consideration, that the parties intended to stipulate that the amount of damages should be the same, when nine-tenths of the work and expense under the contract should have been performed and incurred, as when nothing at all had been done or expended. This distinction has not always been taken, but is, I believe, supported by authority.

Again: the defendant below contracted to perform two distinct acts: *first*, to clear off all the surplus earth from the lots, and *secondly*, to build two houses; and this, according to the decision of the court below, " divides the covenant into two parts, giving liquidated damages for the neglect to build, and unliquidated or open damages for the neglect to remove the surplus earth." By the terms of the contract the forfeiture was expressly provided for, and confined to the failure to build the houses. Now, if the $4,000 are liquidated damages, the defendant might with impunity, have omitted to clear off the lots, except so far as was necessary to enable him to build the two houses, or else the same covenant gives two actions—one for liquidated damages, and another on the covenant to remove the surplus earth—an absurdity that cannot be supposed or allowed.

I am therefore of opinion that the sum of $4,000 in the contract, should be considered as a *penalty*, and not as liquidated damages, and that the amount of damages which the plaintiffs suffered should have been submitted to a jury. I shall accordingly vote for a *reversal* of the judgment.

1841.

Pearson
*v.*
Williams'
Administr's.

On the question being put, *Shall this judgment be reversed?* six senators voted in the *affirmative,* and the President of the senate, the Chancellor and ten senators voted in the *negative.* Whereupon the judgment of the supreme court was AFFIRMED.